**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ANGEL MALDONADO, 03-R-2519,**

                                        **Plaintiff,**

        **-v-**                                        **11-CV-1091Sr**

**SUSANNA MATTINGLY**
**Parole Officer,**

                        **Defendant.**

_____

### DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment. Dkt. #15.


        Plaintiff's third amended complaint, prepared _pro se_, pursuant to 42

U.S.C. § 1983, alleges that the imposition of sex offender conditions by Parole Officer

Susanna Mattingly during his release on parole from February 24, 2010 through March

16, 2010 and September of 2010 through May of 2011 constitute a violation of the _ex_

_post facto_ clause of the United States Constitution;[1] a violation of plaintiff's

constitutional right to substantive and procedural due process; and a violation of

plaintiff's right to free association. Dkt. #52.  Plaintiff seeks monetary damages.  Dkt.

#52, p.19.

_____

        [1] This claim was dismissed with prejudice by Order entered September 24, 2012. Dkt.
#5.

Currently before the Court is defendant Susanna Mattingly's motion for summary judgment (Dkt. #78), and plaintiff's motion for summary judgment. Dkt. #80. For the following reasons, defendant's motion is granted in part and plaintiff's motion is denied.

**FACTS**

Plaintiff pled guilty to a misdemeanor charge of sexual misconduct pursuant to N.Y. Penal Law § 130.20(2), in satisfaction of a charge of rape, third degree, and was sentenced to three years of probation. Dkt. #25, p.16. Plaintiff's probation was discharged on March 16, 1999. Dkt. #1, ¶ 8. Plaintiff asserts that the charges arose from his consensual sexual relationship with a girlfriend when he was 22 and she was 16. Dkt. #80, pp.15 & 23.

In 2002, the New York State Legislature amended New York's Penal Law to include a conviction under Penal Law § 130.20 within the definition of a sex offense for purposes of New York's Sex Offender Registration Act. *2002 Sess. Law News of N.Y. Ch. 11* (S. 6263-A) (McKinney's).

On April 25, 2003, following his guilty plea to a scheme to defraud, first degree; three counts of grand larceny, third degree; attempted petit larceny; tampering with physical evidence; compounding a crime; coercion, second degree; bribing a witness; tampering with a witness, fourth degree; three counts of criminal impersonation, second degree; harassment, second degree; and three counts of

aggravated harassment in the second degree, in satisfaction of Indictment No. 2340/99

and bail jumping, second degree, in satisfaction of Indictment No. 891/01, plaintiff was

sentenced to an aggregate indeterminate term of imprisonment of 5 to 15 years. Dkt.

#80-1, p.3. Plaintiff had portrayed himself on the internet as a police detective with the

New York City Police Department to meet women from whom he obtained significant

amounts of money. Dkt. #45, p.8. Plaintiff was released from custody in May of 2009.

By letter dated October 22, 2009, Dominic A. Dispenza, LCSW-R,

completed a sexual offender evaluation and risk assessment of plaintiff and determined

that plaintiff

> displayed symptoms of an antisocial personality disorder. He
> was deceitful, took no responsibility for his behaviors,
> showed no remorse, and completely lacked empathy.
> Furthermore, he has demonstrated impulsivity,
> aggressiveness, and a reckless disregard for the safety of
> others and himself.
>
> 2. Mr. Maldonado claimed that he does not have a sex
> offense problem and denied the possibility of relapse. He
> denied he committed a sexual offense and claimed to this
> evaluator that he had married his victim in Puerto Rico prior
> to his conviction and she had their child when she was 17
> years old. Mr. Maldonado is reported to have told his
> probation officer that he did not marry this victim until after
> he had been convicted of his offense against her.
>
> * * *
>
> 4. Mr. Maldonado demonstrated that he is not amenable to
> sexual offender treatment. He displayed evasiveness, a
> superficial manner, hostility, and a lack of cooperation during
> this evaluation. Furthermore, he was previously expelled
> from another sex offender treatment program and appears
> to have tried to hide that fact during this evaluation.

Dkt. #25, p.27.

Plaintiff violated parole in November of 2009. Dkt. #80, p.4, ¶ 4. A Violation of Release Report charged plaintiff with 7 violations of the terms and conditions of his release, including failure to complete sex offender treatment, lying to his parole officer about sex offender treatment, lying to his parole officer about employment, failing to provide his cell phone number to his parole officer and lying to his parole officer about his cell phone number. 11-CV-717 at Dkt. #36-1, p.197.[2] On November 24, 2009, plaintiff pled guilty to the charges of failing to provide his parole officer with his cell phone number and lying to his parole officer and was sentenced to time served plus three months. 11-CV-717 at Dkt. #36-1, p.198.

Parole Officer ("PO"), Susanna Mattingly recommended plaintiff for Discretionary Sex Offender ("DSO"), status on February 11, 2010. Dkt. #78-4, ¶ 21 & Dkt. #78-5, ¶ 16. P.O. Mattingly made this recommendation based upon plaintiff's past criminal conviction for sexual misconduct with a minor. Dkt. #78-4, ¶ 20.

On February 11, 2010, an unidentified individual, on behalf of Phillip Overfield, the Area Supervisor for the Niagara Falls Areas Office of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), signed a Designation Regarding Discretionary Sex Offender Status form advising that,

---

[2] In this action, plaintiff alleged that PO Mattingly, *inter alia*, delayed his re-release to parole without affording him due process. 11-CV-717. The Court of Appeals for the Second Circuit affirmed district court's determination that it was reasonable and permissible for the New York State Division of Parole to require approval of his residence as a special condition of release. *Maldonado v. Evans*, 654 Fed. App'x 505 (2d Cir. 2016).

> Based on case review, [Angel Maldonado] was determined to be a discretionary sex offender. Please take necessary steps to ensure that the case remains in intensive sex offender supervisory status until maximum expiration or other discharge from supervision and set the "Supervised as a Sex Offender" indicator to: "*yes, discretionary*."

Dkt. #78-5, ¶ 17 & Dkt. #80-1, p.7.

Supervisor Overfield declares that a "DSO is a parolee who is not on parole for a sex crime, but whose criminal history includes a prior sex offense conviction or the commission of a crime which had a sexual component." 78-4, ¶ 8. He further declares that a DSO designation "is not a public designation and does not involve registering with the State Sex Offender Registry," but otherwise subjects a parolee "to the same conditions of parole as a convicted sex offender." Dkt. #78-5, ¶¶ 10 & 12.

Plaintiff objects to the following conditions of parole, commonly referred to as sex offender conditions, which were imposed upon his release from prison on February 24, 2010:

> 4. I will enter, attend, participate in, cooperate with and successfully complete the Sex Offender counseling program at Mid-Erie Counseling and Treatment as directed by my Parole Officer. I will obey the rules of the program. I will keep all my appointments, the first of which is _____.

> 20. I will have no contact of any kind, in person, by phone, by letter or by third party with any person under 18 years of age without the prior written approval of my Parole Officer.

> 21. I will not call any sexually explicit (900/976) telephone services, including such places as

Quest, Ashley Madison and chat lines. I will not enter or remain in any areas of sexual activity, such as adult bookstores, topless bars, massage parlors, sex shops or adult movie houses. I will submit copies of my telephone bill to the Parole Officer upon request.

22. I shall not enter or remain within 1,000 feet of places where any person under the age of 18 may congregate, including but not limited to: Schools, Playgrounds, Video Arcades, Sports Fields, Malls, Movie Theaters, Bowling Alleys, etc., without the prior approval from my Parole Officer.

23. I will notify my Parole Officer when I establish a relationship with a significant other, and I will inform the other party of my criminal history regarding sexual offenses.

25. I shall not purchase, engage or be in possession of pornographic materials or erotic magazines, tapes, photographs, "X" rated films/DVDs/videos. This includes, but limited to, such content on all telecommunication devices and publications as Playboy, Hustler, North American Man-Boy Love Association, Pedophile information exchange, Pedo-Alert Network or any other similar publications.

26. I shall not have children's toys or video games, video tapes, children's DVDs or excessive amounts of candy or child-like objects or child-like images or photos, or any type of sex toy in my possession, without the prior knowledge and permission of my Parole Officer.

27. I shall not participate in any on-line computer service that involves the exchange of pornographic electronic photos or messages, or establishes sexual encounters or liaisons.

28. I shall not use, own or possess a computer or any type of equipment with "on-line" capabilities.

30. I will not use or possess any medications or supplements designed or intended for the purpose

of enhancing sexual performance or treating
erectile dysfunction without the written permission
of my Parole Officer and the approval of his Area
Supervisor.

31. I will participate in the Division of Parole's
polygraph program as directed by my Parole
Officer. . . .

32. I will not have any Premium Channels on any of
the televisions that I have access to in my Parole
approved residence. Such Premium Channels
include but are not limited to, The Movie Channel,
Showtime, Cinemax and Home Box Office.

36. I will have no contact of any kind, in person,
phone[,] letter, written, text messaging,
electronically, third person or by any other means
with a one, Valerie Cole, without the written
permission of my Parole Officer.

Dkt. #52-1, pp.1-5. The form setting forth the special conditions was signed by plaintiff

and by an unknown parole officer "for Mattingly." Dkt. #52-1, p.5.


PO Mattingly supervised plaintiff from his release from prison on February

24, 2010 until a warrant was issued for violation of parole on March 16, 2010. Dkt. #78-

4, ¶ 24 & Dkt. #80, ¶¶ 7-8. A Violation of Release Report dated March 16, 2010

charged plaintiff with 16 violations of the terms and conditions of his release, including

multiple charges of failure to be truthful in his discussions with his parole officer and

failure to comply with rules, resulting in plaintiff's discharge from his residential

program. 11-CV-717 at Dkt. #36-1, pp.192-202. A Final Parole Violation Hearing was

conducted on April 8, 2010. 11-CV-717 at Dkt. #36-1, p.157. Plaintiff pled guilty to a

violation pertaining to his discharge from the residential program in return for a

sentence of time served plus three months. 11-CV-717 at Dkt. #62-1, p.4.

On June 30, 2010, P.O. Mattingly received a telephone call from Laura O'Brien who claimed that plaintiff had been incarcerated with her son and that plaintiff requested that Ms. O'Brien send 25 $1,000 money orders to plaintiff's girlfriend, Valerie Cole, so that plaintiff could link the woman's son with a lawyer. Dkt. #45, p.10. Ms. O'Brien completed a supporting deposition setting forth the new allegations against plaintiff and Ms. Cole on July 12, 2010. Dkt. #80-1, p.8.

Plaintiff appeared before the Board of Parole on September 23, 2010 and was afforded a release date of September 29, 2010, at which time he commenced supervision in the State of Florida. Dkt. #36-1, pp.179-180 & Dkt. #68, ¶ 25. PO Mattingly declares that she was not involved in plaintiff's parole on September 29, 2010. Dkt. #78-4, ¶¶ 26-30. Supervisor Overfield declares that PO Diana Wingfield-Sherry, the parole officer at Livingston Correctional Facility, the facility from which plaintiff was released, oversaw plaintiff's release on parole and transfer to Florida, where plaintiff was subjected to Florida's Sex Offender Special Conditions. Dkt. #78-5, ¶¶ 20 & 27-28 & Dkt. #80, pp.18-19.

A warrant was issued for plaintiff's arrest on February 7, 2011 after plaintiff failed to report, left his employment and vacated his address without his parole officer's permission. 11-CV-717 at Dkt. #36-1, p.179.

Plaintiff was stopped by the Sheriff's Department in Rutherford, Tennessee on May 10, 2011 and extradited to New York. 11-CV-717 at Dkt. #36-1,

pp.246-247. Plaintiff pled guilty to the charge of failing to report to his parole officer and was assessed six months of delinquent time. 11-CV-717 at Dkt. #36-1, pp.228-244.

On August 17, 2012, plaintiff was convicted of grand larceny in the third degree in violation of New York Penal Law § 155.35 and sentenced as a second felony offender to an indeterminate term of imprisonment of 3½ to 7 years, consecutive to any parole time, with respect to the scheme to send $25,000 to his girlfriend, Valerie Cole. *People v. Maldonado*, 122 A.D.3d 1379 (4th Dep't 2014), *leave to appeal denied*, 27 N.Y.3d 1002 (2016).

Plaintiff was released on parole to Florida on or about January 18, 2018. nysdoccslookup.doccs.ny.gov. The maximum expiration date of his sentence is November 14, 2024. *Id.*

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Discretionary Sex Offender Status

The individual conditions which plaintiff challenges are a direct consequence of the determination to categorize plaintiff as a discretionary sex offender.

"According to the New York State Parole Handbook, '[a] discretionary sex offender is generally a person who has a history of sexual offense or pattern of inappropriate sexual behavior, but is not subject to the Sex Offender Registry for any number of reasons.'" *Webster v. v. Himmelbach*, 271 F. Supp.3d 458, 462, n.1 (W.D.N.Y. 2017) (internal quotations omitted). NYSDOCCS Directive 8304, which "sets forth departmental policy 'to identify and provide intensive supervision strategies to both individuals subject to the New York State Sex Offender Registry and to individuals with a history of sexually inappropriate behaviors so that the interests of public safety and the supervision needs of the releasees are served," defines a discretionary sex offender as "[a]n offender found upon case review and determination . . . to meet Department established criteria for specialized supervision as a sex offender." *Gordon v. LaClair*, 48 Misc. 3d 926, 929 (S.Ct. Franklin Cty 2015). That criteria includes individuals with a current or prior crime of conviction that is a sexually motivated offense, but not an offense included in the New York State Sex Offender Registry, where "[i]t appears that the offender and/or community would benefit from intensive supervision practices that incorporate specialized sex offender 'containment' strategies." *Id.* The Directive does not mandate the application of any specific parole condition to discretionary sex offenders. *Id.* at 930.

Personal Involvement

PO Mattingly seeks summary judgment on the ground that she had no personal involvement in the supervision of plaintiff's parole or the imposition of conditions for such parole between September of 2010 through May of 2011. Dkt. #78-

1, p.4. PO Mattingly further argues that Supervisor Overfield was the individual who designated plaintiff as a discretionary sex offender. Dkt. #78-1, pp.7-8.

Plaintiff responds that Susan Mattingly recommended that plaintiff be supervised as a DSO and supervised plaintiff's parole in February of 2010. Dkt. #80, pp.37-39.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989). In the instant case, PO Mattingly declares that she made the recommendation that plaintiff be designated as a DSO. Dkt. #78-4, ¶ 21 & Dkt. #78-5, ¶ 16. Moreover, PO Mattingly supervised plaintiff and charged him with violations of the terms and conditions of his parole between February 24, 2010 and March 16, 2010. Dkt. #78-4, ¶ 24 & Dkt. #80, ¶ 7-8. This is sufficient to establish Susanna Mattingly's personal involvement in the imposition of DSO parole conditions challenged by plaintiff. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) (enforcement of special condition of parole constitutes personal involvement).

Qualified Immunity

Defendant argues that she is entitled to qualified immunity because at the time of the designation, there was no judicial determination that the imposition of sex

offender conditions implicated a liberty interest and there was no clear right to a hearing prior to a determination to designate someone as a discretionary sex offender. Dkt. #78-1, p.14.

Plaintiff responds that qualified immunity is inappropriate because there are material questions of fact as to whether defendant's actions were objectively reasonable given that plaintiff was not convicted of a sex offense and whether the special conditions of parole imposed upon him were reasonably related to the nature and circumstances of plaintiff's crimes. Dkt. #80, p.41.

"Qualified immunity shields government officials from claims for money damages unless a plaintiff adduces facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (internal quotations omitted). If the answer to the first question is no, there is no need for further inquiry because a defendant has no need for immunity absent a viable constitutional claim. *Id.* "But even if the answer is yes, or not definitively no, a defendant may still be entitled to qualified immunity if the right was not clearly established at the time of his challenged actions." *Id.* "Indeed, a court that decides this second question in a defendant's favor may award qualified immunity without conclusively answering the first." *Id.* "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015), *quoting Reichle v. Howards,* 566 U.S. 658, 664 (2012). Thus, the right allegedly violated must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official. *Reichle*, 566 U.S. at 665 (internal quotations omitted). In *Reichle*, for example, the Supreme Court held that although it was clear at the time of plaintiff's arrest that the First Amendment prohibited government officials from retaliating against an individual for his speech, it was not clearly established that an individual was protected from a retaliatory arrest that was otherwise supported by probable cause. *Id.* The standard is deliberately forgiving to afford public officials breathing room to make reasonable but mistaken judgments without fear of liability. *Mara*, 921 F.3d at 68. "In short, if at least some reasonable officers in the defendant's position could have believed that the challenged conduct was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Id.* (internal quotations omitted). "Indeed, the Supreme Court has repeatedly observed that qualified immunity protects 'all but the plainly incompetent or those who knowingly violated the law.'" *Id., quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

*Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . " U.S. CONST. amend. XIV. The Due

Process Clause contains both a procedural and substantive component. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The procedural component bars the deprivation of a constitutionally protected interest in life, liberty or property without due process of law, while the substantive component bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures to implement them. *Id.* (internal quotation omitted); *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) ("[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.") (internal quotations omitted).

*Procedural Due Process*

Plaintiff argues that parole officers have no authority to classify him as a sex offender and that this label has imposed both a stigma and tangible burden upon him. Dkt. #52, pp.8-9. He further complains that he was not afforded notice of the special conditions, an explanation as to why they were being imposed or an opportunity to dispute the imposition of the special conditions. Dkt. #52, p.17 & Dkt. #80, p.36. Plaintiff claims that he has no history of sexual misbehavior subsequent to the sexual misconduct conviction. Dkt. #80, p.24.

Defendant argues that plaintiff has no liberty interest in any specific condition of parole and, therefore, no right to notice or a hearing regarding such conditions. Dkt. #78-1, pp.8 & 12. Even if plaintiff was entitled to due process relating to

his designation as a discretionary sex offender, defendant argues that plaintiff had the opportunity to challenge such designation through an article 78 proceeding. Dkt. #78-1, p.16.

Plaintiff responds that an article 78 proceeding was not an adequate post deprivation remedy because such a proceeding became moot each time he was re-incarcerated. Dkt. #80, p.42.

Procedural due process claims are analyzed in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky v. Dep't. of Corrs.*, 490 U.S. 454, 460 (1989). The Court of Appeals for the Second Circuit has consistently held that, under New York's parole scheme, "plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *See also, Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

As a result, "it is well-established that 'the [New York] Parole Board's discretionary imposition of special conditions is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner.'" *Maldonado v. Fischer*, No. 11-CV-1091, 2012 WL 4461647, at *4 (W.D.N.Y.

Sept. 24, 2012), *quoting Walker v. Mattingly*, 09-CV-845, 2012 WL 1160772, at *6 (W.D.N.Y. Apr. 5, 2012); *See Nash v. King*, No. 13-CV-753, 2015 WL 1461291, at *3 (W.D.N.Y. March 30, 2015) ("Federal courts have consistently held that a parolee has no constitutionally protected interest in being free from special conditions of release") (internal quotation omitted); *Cooper v. Dennison*, No. 08-CV-6238, 2011 WL 1118685, at *11 (W.D.N.Y. Mar. 24, 2011) ("parolee . . . has no liberty interest in avoiding the imposition of special conditions of parole."); *Boddie v. Chung*, No. 09-CV-4789, 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011) ("A parolee has no constitutionally protected interest in being free of a special condition of parole."); *Pena v. Travis*, No. 01 Civ. 8534, 2002 WL 31886175, at *13 (S.D.N.Y. Dec. 27, 2002) ("Because the imposition of special conditions is left to the discretion of the Board of Parol and parole officers, plaintiff does not have a protected liberty interest in being free from special conditions."). Thus, to the extent that plaintiff complains about the special conditions of release imposed upon him as a result of his designation as a discretionary sex offender, defendant's motion for summary judgment is granted because plaintiff does not have a liberty interest in being free from any such conditions.

Plaintiff fares no better if his designation as a discretionary sex offender is considered separate and apart from the special conditions of parole imposed upon plaintiff as a consequence of that designation. As explained by the Court of Appeals in *Vega v. Lantz*, "while it may be the case that, in certain circumstances, misclassification as a sex offender results in stigma plus, the possibility is of no particular assistance to [plainitff] because he has not established a threshold requirement - the existence of a

-17-

reputation-tarnishing statement that is *false*." 596 F.3d 77, 82 (2d Cir. 2010). Thus, although "it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest," *Id.* at 81-82, plaintiff in the instant case has been convicted of a sex offense, *to wit*, sexual misconduct in violation of N.Y. Penal Law § 130.20(2). Therefore, this case is distinct from *Singleton v. Doe*, where the district court denied summary judgment to parole officers who designated plaintiff as a discretionary sex offender based upon prison disciplinary proceedings finding plaintiff guilty of indecent exposure and lewd acts. 210 F. Supp.3d 359 (E.D.N.Y. 2016). In any event, the district court in *Singleton* determined that qualified immunity was appropriate because neither the Court of Appeals for the Second Circuit nor the Supreme Court had made clear whether a parolee's liberty interest in avoiding a designation as a sex offender extended to designation as a discretionary sex offender. *Id.* at 371; *See also Webster*, 271 F. Supp.3d at 464 ("it is an unsettled question in this Circuit as to whether a prisoner holds a liberty interest in being designated as a DSO."); *Gordon v. Semrug*, No.14-CV-324, 2017 WL 2241966, at *6 (W.D.N.Y. May 23, 2017) ("But although a prisoner parolee may have a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation, neither the Second Circuit nor the Supreme Court has made clear that the interest extends to a DSO designation."). As "[p]laintiff's right to receive due process prior to being designated a discretionary sex offender is not clearly established," defendant is entitled to qualified immunity. *Gordon*, 2017 WL 2241966, at * 6 (collecting cases).

*Substantive Due Process*

Plaintiff claims that the imposition of sex offender conditions violates his constitutionally protected right to substantive due process because the conditions imposed upon him are arbitrary and capricious rather than reasonably related to the nature and circumstances of the offenses for which he is currently on parole or the history and characteristics of his prior conviction for sexual misconduct. Dkt. #52, p.6 & Dkt.#80, pp.15 & 21. Plaintiff notes that he completed his sentence of probation on the sexual misconduct conviction, which did not qualify as a sex offense at the time of his conviction, without any requirement for sex offender counseling or any other condition currently being imposed upon him. Dkt. #52, p.7 & Dkt. #80, p. 30.  Plaintiff argues that sex offender counseling is intrusive and cannot be successfully completed unless plaintiff admits that he is a sex offender. Dkt.#80, p.25. Plaintiff also claims that the restriction of his ability to have contact with his wife, Valerie Cole, his children, or any person under the age of 18, is a violation of his First Amendment right to association and that he should not be required to disclose his criminal history to potential romantic partners or to disclose the identity of potential romantic partners to his parole officer. Dkt. #52, pp.15-16 & Dkt. #80, pp.16 & 32-33.

Defendant responds that there is a connection between the facts of plaintiff's criminal history and the special conditions imposed which preclude any potential that defendant acted in an arbitrary and capricious manner. Dkt. #78-1, p.9.

The substantive component of the Due Process Clause of the Fourteenth Amendment protects individual liberty against certain government actions regardless of

the procedures used to implement them. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992).  However, it is well-established that substantive due process protections extend only to those interests that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969), and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Reno v. Flores*, 507 U.S. 292, 303 (1993).

"The most familiar of the substantive liberties protected by the Fourteenth Amendment are those recognized by the Bill of Rights." *Planned Parenthood of Southeastern PA v. Casey*, 505 U.S. 833, 848 (1992). More specifically, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271 (1994), *citing Casey*, 505 U.S. at 847-49 (1992) (describing cases in which substantive due process rights have been recognized); *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (recognizing that "choices to enter into and maintain certain intimate human relationships," such as marriage, "must be secured against undue intrusion by the State.").

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009), *quoting Lewis*, 523 U.S. at 847, n.8. To

satisfy this standard, a plaintiff must show that the government decision being challenged "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989), *cert. denied*, 496 U.S. 941 (1990). Within the prison context, very few conditions have been deemed sufficiently shocking to violate substantive due process rights, for example, transfer from prison to a mental hospital and involuntary administration of psychotropic drugs. *Tavares v. Amato*, 954 F. Supp.2d 79, 98 (N.D.N.Y. 2013), *citing Sandin v. Connor*, 515 U.S. 472, 479 n.4 (1995).

Mandatory sex offender programming for an individual convicted of a sex offense does not rise to the level of a substantive due process violation. *See Miller v. Annucci*, 9:19-CV-0030, 2019 WL 2370295, at *13 (N.D.N.Y. June 5, 2019); *Blake v. Fischer*, No. 09-CV-266, 2010 WL 2522198, at *13 (N.D.N.Y. Mar. 5, 2010); *But See Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *9 (S.D.N.Y. Jan. 11, 2019) (parolee "has a substantive liberty interest in not being labeled as a sex offender when he has committed no sexual offense."). As plaintiff in the instant case has committed a sex offense, *to wit*, sexual misconduct in violation of N.Y. Penal Law § 130.20(2), the Court finds that the decision to impose sex offender counseling upon plaintiff's parole conditions is not irrational or arbitrary.

Limitations on contact with a spouse or child are analyzed using the framework of substantive due process, which is subject to the same analysis as a familial association claim under the First Amendment. *See Doe v. Cappiello*, 758 Fed. App'x. 181, 184 (2d Cir. 2019) (First Amendment familial association and Fourteenth

Amendment substantive due process subject to identical analysis). Under this analysis, "[c]onditions of release that restrict the right to intimate association must be reasonably and necessarily related to the legitimate interests of the parole regime, such as rehabilitation and protection of the public, and tailored in light of the conduct for which the individual was convicted." *Harris v. N.Y. Div. of Parole,* 9:18-CV-1435, 2019 WL 1958017, at *4 (N.D.N.Y. May 1, 2019) (internal quotations and alteration omitted).

In *Bostic v. Jackson*, the district court granted defendants' motion for summary judgment as to plaintiff's challenge to a condition of parole which limited contact and prevented him from residing with his wife where she was the victim of the crime for which plaintiff was convicted. No. 9:04-CV-676, 2008 WL 1882696, at *4-5 (N.D.N.Y. Apr. 24, 2008). In the instant case, however, plaintiff's wife at the time this condition was instituted was Kimberly Maldonado. *See Maldonado v. Evans*, No. 11-CV-717, 2015 WL 1431646, at * (W.D.N.Y. March 27. 2015) (setting forth how plaintiff's wife, Kimberly Maldonado, deceived parole officials regarding plaintiff's proposed residence, which was around the corner from Ms. Cole's residence), *aff'd,* 654 Fed. App'x 505 (2d Cir. 2016).

In *Matusick v. Erie County Water Authority*, the Court of Appeals for the Second Circuit noted that many courts had limited the constitutional protection to marriage, but determined that it should extend to romantic relationships involving deep attachments, including a relationship of bethrothal. 757 F.3d 31, 58-59 (2d Cir. 2014). As that case was not decided until February 25, 2014, however, even assuming that

plaintiff's relationship with Valerie Cole would qualify as entitled to constitutional protection under *Matusick*, the right to constitutional protection of such a relationship was not clearly established at the time the parole condition was imposed. As a result, defendant is entitled to qualified immunity for plaintiff's claims for money damages arising from the imposition of the no contact condition between himself and Valerie Cole.

In contrast, it is well established that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by substantive due process. *Doe v. Lima*, 270 F. Supp.3d 684, 702 (S.D.N.Y. 2017), *citing United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005), *aff'd, Doe v. Cappiello*, 758 Fed app'x 181 (2d Cir. 2019). Restrictions upon such a relationship must be narrowly tailored to serve a compelling government interest. *Myers*, 426 F.3d at 126. Thus, "parole conditions that bar a parent from all contract with a child or condition such contact on a parole officer's approval implicate a fundamental liberty interest in a familial relationship, are subject to strict scrutiny, require individualized justification based on the threat posed by the defendant to the child, and require that the releasee be given an opportunity to be heard before their imposition." *Lima*, 270 F. Supp.3d at 703. Absent an individualized inquiry into whether an individual's sexual proclivities pose a threat to his child, the imposition of a harsh condition of supervised release that either prohibits interaction with his children or makes such interaction subject to supervision by a person approved by the probation officer violates the individual's substantive due process rights. *United States v. McGeoch*, 546 Fed. App'x 44, 49 (2d

Cir. 2013). Therefore, to the extent that plaintiff can establish that he demonstrated "a full commitment to the responsibilities of parenthood," and "played an active role in the life of his son," prior to his incarceration, defendant is required to establish that the condition was narrowly tailored to protect plaintiff's children. *Myers*, 426 F.3d at 128. Accordingly, defendant's motion for summary judgment is denied with respect to plaintiff's allegation that the special conditions of parole prevented him from contact with his children.

To the extent that plaintiff complains that his parole conditions prevented him from associating with family members with young children, however, qualified immunity is granted because the contours of any such right remain unclear. *See Yunus*, 2019 WL 168544, at *18-19 (finding no fundamental right to contact with extended family members). Furthermore, the notification provision is a reasonable restriction on plaintiff's First Amendment rights. *See United States v. Reeves*, 591 F.3d 77, 82 (2d Cir. 2010) ("We have no doubt that in the appropriate circumstance a court . . . could require a defendant to notify third-parties of risks arising from the defendant's criminal record, personal history, or characteristics."); *Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *10 (S.D.N.Y. Aug. 15, 2014) (upholding condition requiring probationer to notify his probation officer of intimate relationships).

First Amendment

Plaintiff challenges the parole restrictions impacting his ability to enjoy public spaces, including church. Dkt. #52, p.16 & Dkt. #80, ¶ 19 & p.33. Plaintiff further

argues that the ban on computer usage prevents him from pursuing his career as a musician and that the ban on premium cable prevents him from enjoying sports such as boxing. Dkt. #80, p.27.

"It is well established that prisoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). "The same goes for parolees, who are effectively still prisoners vis-á-vis their constitutional rights." *Muhammad v. Jenkins*, No. 12 Civ. 8525, 2013 WL 5225573, at *10 (S.D.N.Y. Sept. 13, 2013). "Since *Salahuddin*, then, the right to participate in congregate religious services has been settled law, and a parole officer . . . is charged with knowledge thereof" and cannot, therefore, reasonably believe that it was in his power to bar plaintiff from participating in communal worship altogether." *Id.; See United States v. Hernandez*, 209 F. Supp.3d 542, 546 (E.D.N.Y. 2016) (although the First Amendment rights of paroled sex offenders are circumscribed, and conditions preventing defendants convicted of sex offenses from associating with minors have been upheld, no compelling government interest justifies prohibiting attending religious services where a minor is present). Thus, defendant is not entitled to qualified immunity with respect to plaintiff's claim that the conditions of parole prevented him from attending communal worship.

In *Pakingham v. North Carolina*, the Supreme Court held that registered sex offenders cannot be routinely or categorically barred from social media. __ U.S. __, 137 S. Ct. 1730, 1737 (2017) ("to foreclose access to social media altogether is to

prevent the user from engaging in the legitimate exercise of First Amendment rights.");

*See Yunus*, 2019 WL 168544, at *16 ("Under *Packingham*, blanket limitations on an

individual's ability to access social media will receive intermediate scrutiny, even when

imposed as conditions of parole."). Even before *Packingham*, the Court of Appeals for

the Second Circuit rejected total bans on internet access as conditions of supervised

release. *United States v. Eaglin,* 913 F.3d 88, 96 (2d Cir. 2019), *citing United States v.*

*Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002), and *United States v. Peterson*, 248 F.3d 79,

82-83 (2d Cir. 2001). However, these cases involve the statutory standard imposed on

federal conditions of supervised release. *See Yunis*, 2019 WL 168544, at *23. In light

of this different legal standard, these cases "are not controlling authority as to the

constitutional analysis of state parole conditions." *Id.* Thus, at least prior to

*Packingham*, the constitutional right of individuals on probation to access social media

or commercial internet sites was not clearly established. *Ennis v. Annucci*, 19-CV-501,

2019 WL 2743531, at *8 (N.D.N.Y. July 1, 2019).

 

       As to the condition relating to adult pornography and other sexually

explicit material, including the limitation on premium cable channels, the Court of

Appeals for the Second Circuit has determined that the conditional liberty to which

offenders on supervised release are subject may include a prohibition against

possession of pornographic matter. *United States v. Savastio*, 777 Fed. App'x 4, 7 (2d

Cir. 2019) (collecting cases).

**Damages**

Defendant argues that plaintiff would only be entitled to nominal damages because, pursuant to 42 U.S.C. § 1997e(e), he has not alleged physical injury. Dkt. #78-1, p.17.

Plaintiff responds that this statue does not apply because his damages result from his designation as a DSO and the imposition of special conditions of parole. Dkt. #80, p.43.

Under the Prisoner Litigation Reform Act of 1995 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18). 42 U.S.C. § 1997e(e). "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). In the instant case, however, plaintiff is not seeking damages for injury suffered while confined in a jail, prison or other correctional facility; he is seeking damages for constitutional injury caused by the imposition of conditions of release on parole. *See, e.g., Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (district court erred in classifying parolee as a prisoner under the PLRA). Accordingly, the limitations of 42 U.S.C. § 1997e(e) are not applicable.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment (Dkt. #78), is granted except with respect to plaintiff's claim that the special conditions of parole prevented him from contact with his children between February 24, 2010 and March 16, 2010 and his claim that he was prevented from attending religious services between February 24, 2010 and March 16, 2010, and plaintiff's motion for summary judgment (Dkt. #80), is denied.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **November 6, 2019**